STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF CASS                          EAST CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| Campbell Property Management, LLC,<br><br>                              Plaintiffs,<br><br>         v.<br><br>Hiscox, Inc.,<br>                              Defendant. | Civil No. _____<br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

[¶1]     Plaintiff, Campbell Property Management, LLC, for its Complaint against Defendant, Hiscox, Inc., states and alleges as follows:

## PARTIES

[¶2]     Campbell Property Management, LLC ("Campbell Property Management"), is a North Dakota limited liability company duly organized and operating under the laws of the State of North Dakota, with its principal place of business in Fargo, North Dakota.

[¶3]     Hiscox, Inc. ("Hiscox") is a Delaware corporation and non-resident insurance carrier with its principal place of business in New York, New York, and is authorized to do business in the State of North Dakota.

## JURISDICTION AND VENUE

[¶4]     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a). Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

[¶5]     Venue is proper under 28 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

[¶6]     Campbell Property Management is a professional property management company that provides professional service management to 54 separate business entities.

[¶7]     As the professional property management company for the 54 separate business entities, Campbell Property Management has a fiduciary obligation overseeing the operating accounts of the 54 separate entities, particularly as to income, expenses, and rental security deposits.

[¶8]     Campbell Property Management has been insured since 2009 under a Hiscox Professional Liability Errors and Omissions Insurance policy.

[¶9]     Consistent with that pattern, Hiscox issued to Campbell Property Management an insurance policy providing insurance coverage from the period of March 15, 2017, through March 15, 2018. The policy provided liability coverage up to $2 Million Dollars with a $1,000 deductible.

[¶10]    The policy provided coverage for claims made against Campbell Property Management acting in its role as a property manager. The original certificate number was MPL1092583.17 with a renewal policy number of MPL1092583.18.

## UNDERLYING LOSS FACTS

[¶11]    As the property manager for these 54 separate business entities, Campbell Property Management created separate Client Accounts, a checking account and a savings account, for each of these 54 separate entities at various banks. The Client Accounts were used to handle income, expenses and rental deposits. At all times, these accounts were the property of Campbell Property Management clients. The Client Accounts were handled by Campbell Property Management as a fiduciary to the 54 business entities.

[¶12]    The majority of the Client Accounts of Campbell Property Management were handled through accounts with Choice Financial, a Fargo, North Dakota bank.

2

[¶13]    Campbell Property Management was contacted by Choice Financial on January 12, 2018 regarding the Client Accounts held at the bank.

[¶14]    The President of Choice Financial informed Campbell Property Management that Choice Financial had determined electronic transfers were going from Client Accounts of Campbell Property Management to a personal account in the name of Campbell Property Management's controller, Mickey Haarstad ("Haarstad").

[¶15]    Choice Financial notified Campbell Property Management of 155 wrongful electronic transfers made between September 29, 2014 and January 9, 2018 regarding Client Account funds being diverted to Haarstad.

[¶16]    These electronic transfers totaled $1,294,967.58.

]¶17]    That same afternoon, January 12, 2018, Campbell Property Management locked-down its accounting software system and contacted all of its banking institutions to remove any authority level or access Haarstad had with those banking institutions on behalf of Campbell Property Management Client Accounts.

[¶18]    Haarstad electronically transferred Client funds into her personal bank account at Choice Financial on her own accord and that no owner, member, director, officer, or manager of Campbell Property Management had any knowledge of her wrongdoing until informed by Choice Financial on January 12, 2018. These funds were not the separate property of Campbell Property Management but held by Campbell Property Management as a fiduciary providing the professional services of property management for the 54 separate entities.

[¶19]    Campbell Property Management acted reasonably to safeguard its Client's funds by setting up separate accounts at the bank for each of the 54 separate entities. There was no comingling

3

of Client funds by Campbell Property Management as it had separate Client Accounts at the bank for each of the 54 separate entities.

### HISCOX PROFESSIONAL LIABILITY ERRORS AND OMISSIONS INSURANCE COVERAGE

[¶20]    On February 13, 2017, Hiscox issued a Professional Liability Errors and Omissions Insurance policy ("Policy") to Campbell Property Management for the policy period March 15, 2017 to March 15, 2018, with a retroactive date of March 15, 2009. A copy of the policy is attached as **Exhibit A**.

[¶21]    The Policy is a claims-made and reported policy.

> This is a Claims made and Reported Policy in which Claims Expenses are included within the Limit of Liability unless otherwise noted . . .

[¶22]    The Policy provided as to the "Insuring Agreement":

> Underwriters will pay on behalf of the Insured all Damages and Claim Expenses in excess of the Deductible and subject to the applicable Limit of Liability that the Insured becomes legally obligated to pay as a result of any covered Claim that is first made against the Insured and reported in writing to Underwriters during the Policy Period or during any properly exercised and applicable Extended Reporting Period, for any Wrongful Act by the Insured or by anyone for whom the Insured is legally responsible, provided, however, that such Wrongful Act was committed or allegedly committed on or after the Retroactive Date set forth in Item 8, of the Declarations and further provided that the Insured had no knowledge of the actual or alleged Wrongful Act prior to the inception date of this Policy.

[¶23]    The policy provided a retroactive date of March 15, 2009.

[¶24]    The Policy includes the following definitions:

> . . .

> B. Affiliate means any person or entity, which is related to any Insured through common ownership, control or management. Affiliate shall not include Subsidiary.

> . . .

4

D. Claim means any notice received by the Insured of a demand for Damages or for non-monetary relief based on any actual or alleged Wrongful Act, whether or not the nature or extent of the Damages or non-monetary relief is known or asserted at the time of receipt of any notice.

E. Claim Expenses means:

1.　　all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of Underwriters in the investigation, defense, appeal, and settlement of a Claim;

. . .

J. Insured means:

1.　　the Individual Insured;
2.　　the Named Insured;
3.　　any Subsidiary of the Named Insured;
4.　　a Joint Venture in which the Named Insured participates as a joint venturer pursuant to a written joint venture agreement, but only with respect to the liability imposed on the Named Insured for its participation in such Joint Venture and only with respect to Wrongful Acts committed or allegedly committed by the Named Insured.

K. Joint Venture means a business endeavor, confirmed in a written agreement, between the Named Insured and one or more entities or individuals in which the Named Insured's participation is the performance of Professional Services.

L. Named Insured means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. of the Declarations.

. . .

P. Professional Services means only those services specified in Item 3. of the Declarations, as performed by or on behalf of the Named Insured for others for a fee or other compensation.

. . .

T. Wrongful Act means any actual or alleged breach of duty, negligent act, error, omission, or Personal Injury committed solely in the performance of the Professional Services of the Insured.

[¶25]   The 54 separate business entities all made claims against Campbell Property Management for sums diverted by Haarstad.

[¶26]   Campbell Property Management is legally obligated to pay the claims made against it by the 54 separate business entities. Campbell Property Management is a named insured and it was providing professional services as defined within the policy.

[¶27]   The Policy provides the following conditions:

> B. Notice of potential Claims
>
> > If, during the Policy Period an Insured first becomes aware of a Wrongful Act to which this Insurance applies and which might subsequently give rise to a Claim, the Insured may give written to Underwriters of a potential Claim during the Policy Period. Such notice must include:
> >
> > 1.   the identity of the potential claimant;
> > 2.   the identity of the person(s) who allegedly committed the Wrongful Act;
> > 3.   the date of the alleged Wrongful Act;
> > 4.   specific details of the alleged Wrongful Act; and
> > 5.   any written notice from the potential claimant describing the Wrongful Act.

[¶28]   Timely notices of the claims have been forwarded to Hiscox.

[¶29]   The Policy in Endorsement 1 provided the coverage to Campbell Property Management "in the performance of services as a property manager, for a fee."

[¶30]   Endorsement 5 of the Policy describes "Property Managed" as follows:

> In consideration of the premium charged, it is hereby understood and agreed that with respect to Claims made against the Insured by the other owners of real estate properties in which said Insured holds an equity interest or by any third party, subject to all Policy terms and conditions, the amounts payable to the Company shall be a percentage of the total amount necessary to satisfy the Claim which is equal to the percentage of the subject property or properties owned by interests other than the Insured.

The coverage afforded by this endorsement shall terminate at such time as the sum of the percentages of the property owned by the Insured shall exceed 50.0% of the total ownership of the property.

[¶31]   Campbell Property Management did not hold any equity interest in any of the 54 separate business entities.

[¶32]   Endorsement 7 of the Policy sets out certain relevant "Property Management Services Endorsement" provisions:

> PM-B.  **Property Management Services** means the following:
>
> 1.   development and implementation of management plans and budgets;
> 2.   oversight of physical maintenance of property;
> 3.   solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;
> 4.   development, implementation and management of loss control and risk management plans for real property;
> 5.   development, procurement, implementation and management of contracts and subcontracts necessary to the daily functioning of real property; or
> 6.   personnel administration and record keeping.

## OTHER INSURANCE

[¶33]   The policy provided as to other insurance:

> G. **Other Insurance**
> This Policy shall be excess insurance over any other valid and collectable insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this Policy.

[¶34]   Campbell Property Management has recovered from Harleysville Insurance Company, through its commercial lines insurance policy regarding employee theft, $1,000,000.00.

[¶35]   The Harleysville policy also contained a Commercial Property Plus Endorsement that covered Employee Theft and Forgery or Alteration with the policy limit of $25,000. Harleysville

Insurance Company, without delay and without contention, has paid $1,025,000.00 under its insurance policy to Campbell Property Management.

[¶36]   Harleysville acted fairly and in good faith in discharging its contractual responsibilities to Campbell Property Management. Haarstad, through her wrongful, unauthorized transfers secured $1,294,967.58, resulting in a present claim against Hiscox in the amount of $269,967.58.

### NOTICE OF CLAIMS TIMELY MADE

[¶37]   Campbell Property Management gave official written notice to Hiscox of potential claims, as required under the policy, on February 7, 2018.

[¶38]   Campbell Property Management provided a signed Warranty Statement for Proposed Coverage to the Hiscox Underwriter dated March 28, 2018.

[¶39]   On May 11, 2018, a Notice of Claim for each of the approximate 54 separate entities involved in property management were submitted to Hiscox, per the policy requirements.

[¶40]   Campbell Property Management hired Fargo accounting firm Eide Bailly to determine the precise number of loss to each entity. By a letter of August 7, 2018, the Eide Bailly report was provided to Hiscox.

### HISCOX DENIAL AND RESULTING DAMAGES

[¶41]   Hiscox has wrongfully refused to make any payment under its policy to Campbell Property Management.

[¶42]   Campbell Property Management retained legal counsel to assist in the presentation of its claims to Hiscox in addition to helping with other issues involved in this incident. To date, Campbell Property Management has incurred attorney's fees in the amount of $23,422.79.

[¶43]   Campbell Property Management retained Eide Bailly, an accounting firm, to provide forensic accounting services to determine the precise amount of loss to each entity, which involved a

lengthy and detailed review and examination. Campbell Property Management paid a total of $60,515.06 to the accounting firm for its necessary, professional, and expert forensic accounting services.

## COUNT I
## BREACH OF CONTRACT

[¶44]   Campbell Property Management realleges and reincorporates all previous paragraphs of the Complaint.

[¶45]   Hiscox issued the Policy to Campbell Property Management on or about March 15, 2017 with a retroactive date of March 15, 2009.

[¶46]   Campbell Property Management paid all premiums required to maintain the Policy issued by Hiscox.

[¶47]   Hiscox issued the Policy with a coverage limit of $2,000,000.00 to Campbell Property Management.

[¶48]   As required by the Policy, Campbell Property Management timely submitted to Hiscox notice of the claim and the claims for the loss sustained by Campbell Property Management.

[¶49]   Campbell Property Management has requested Hiscox process the claim and provide coverage for the losses incurred in excess of $260,000.

[¶50]   Hiscox has refused to pay on the claim and has refused to honor the Policy coverage afforded to Campbell Property Management.

## COUNT II
## BREACH OF INSURER'S DUTY TO ACT IN GOOD FAITH

[¶51]   Campbell Property Management realleges and reincorporates all previous paragraphs of the Complaint.

[¶52]   Hiscox owes to Campbell Property Management, as its insured, duties to act fairly and in good faith.

[¶53]   Hiscox's duties require fair dealing and good faith in paying claims made by its insureds and providing coverage.

[¶54]   Hiscox failed to provide coverage for Campbell Property Management and failed to compensate Campbell Property Management, without proper cause, for a loss covered under the Policy replying upon unreasonable interpretation of the policy.

[¶55]   Campbell Property Management provided available and necessary documents to Hiscox in order to substantiate its claim. Multiple times Campbell Property Management has communicated its reasonable interpretation of the Policy to Hiscox.

[¶56]   Hiscox has breached its duties of good faith owed to Campbell Property Management and has caused damages and liability to Campbell Property Management.

[¶57]   Campbell Property Management is entitled to its economic and noneconomic damages in addition to the policy amount owed.

[¶58]   Campbell Property Management reserves its rights under N.D.C.C. § 32-03.2-11 to secure additional remedies.

[¶59]   **WHEREFORE,** Plaintiff, Campbell Property Management, LLC, prays for an award of damages against Defendant Hiscox, Inc. as follows:

   a.   For all sums due under the applicable Policy issued to Campbell Property Management, LLC;

   b.   For damages as a result of Hiscox's unreasonable failure to pay under its duty of good faith to its insured;

   c.   For its costs and disbursements to which Campbell Property Management, LLC is entitled by law;

   d.   For its attorney's fees, costs, and disbursements; and

e. For such other and further relief the Court deems just and equitable.

Dated this 26th day of October, 2018.

_Rnl H. Mc_

Ronald H. McLean (ND #03260)
Kasey D. McNary (ND #06590)
SERKLAND LAW FIRM
10 Roberts St. N. | PO Box 6017
Fargo, North Dakota 58108-6017
Phone: (701) 232-8957
_rmclean@serklandlaw.com_
_kmcnary@serklandlaw.com_
_ATTORNEYS FOR PLAINTIFF_
_CAMPBELL PROPERTY MANAGEMENT,_
_LLC_

# EXHIBIT A



**HISCOX**

# CERTIFICATE OF INSURANCE
## Effective with UNDERWRITERS AT LLOYD'S, LONDON

Hiscox Inc. 520 Madison Avenue 32nd floor, New York, NY 10022
(914) 273-7400

**Please note that, except to such extent as may be provided otherwise, this insurance is limited to those claims that are first made against the insured and reported to underwriters during the Policy Period. Please see the insuring agreements and also please review this insurance carefully and discuss the coverage provided by this insurance with your insurance agent, broker, or representative.**

In accordance with the authorization granted to Hiscox Inc. under Contract No. B1234HISINC2017 by certain Underwriters at Lloyd's, London, whose names and the proportions underwritten by them can be ascertained by reference to the said Contract, which bears the Seal of Lloyd's Policy Signing Office and is on file at the office of the said Agency and in consideration of the premium specified herein, the said Underwriters do hereby bind themselves, each for his own part and not one for another, their heirs, executors and administrators, to insure as follows in accordance with the terms and conditions contained or endorsed hereon.

| | | |
|---|---|---|
| Broker No.: | US 0002204 | Burns & Wilcox (Professional Liability Center of Excellence) |
| Certificate No.: | MPL1092583.17 | 155 N Wacker Dr Ste 1830 |
| Renewal of: | MPL1092583.16 | Chicago, Illinois 60606 |

# Declaration
**Professional Liability Errors & Omissions Insurance** (Claims made basis)

| | | |
|---|---|---|
| 1. | Named insured: | Campbell Property Management, LLC |
| 2. | Address: | 1131 Westrac Dr S Ste 100<br>Fargo, North Dakota 58103-2374 |
| 3. | Named Insured's Profession: | Refer to Endorsement (1) E2. |
| 4.A. | Limit of Liability: | $ 2,000,000   Each **Claim**, including **Damages**, **Claim Expenses** and **Supplementary Payments** |
| 4.B. | | $ 2,000,000   in the aggregate for all **Claims**, including **Damages**, **Claim Expenses** and **Supplementary Payments** |
| 5. | Deductible: | $ 1,000   Each **Claim**, including **Damages** and **Claim Expenses**, but not **Supplementary Payments** |
| 6. | Notice of Claim to: | Hiscox \| Attn: Professional Liability Claims Department<br>520 Madison Avenue, 32nd Floor New York, NY 10022 HiscoxClaims@hiscox.com |

| | | |
|---|---|---|
| 7. | Policy period: | Inception date: 03/15/2017    Expiration date: 03/15/2018 |

Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 AM. (Standard Time) at the address of the Named Insured.

| | | | |
|---|---|---|---|
| 8. | Retroactive Date: | 03/15/2009 | 9. Date of Application: 03/14/2016 |
| 10. | Premium: | $ 3,887.00 | Processed Date: 02/13/2017 |
| 10.A | Additional Charges | $ 75.00 - Administrative Fee | |
| 11. | Attachments: | (1) E2.1, (2) E54.2, (3) E65.1, (4) E101.1, (5) E111.1, (6) E240.12, (7) E451.2, (8) E9990.2, (9) E102.1 | |
| 12.A. | Extension Period: | 12 Months | 12.B. Extension Percentage: 75.00 % |

Policy Fee: $100.00
IM Policy Fee: $25.00
Supplier Fee: $75.00
Surplus Tax: $71.52

The Certificate terms and conditions contained herein or endorsed hereon and such other provisions, agreements or conditions as may be endorsed hereon or added hereto are hereby incorporated in this Certificate. No representative of the Underwriters shall have power to waive or be deemed to have waived any provision or condition of this Certificate unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this Certificate exist or be claimed by the Insured(s) unless so written or attached.

IN WITNESS WHEREOF this Certificate has been signed at New York, New York

Hiscox Inc.

Notice: 1. an insurer that is not licensed in this state is issuing the insurance policy that you have applied to purchase. These companies are called "nonadmitted" or "surplus lines" insurers. 2. The insurer is not subject to the financial solvency regulation and enforcement that applies to licensed insurers in this state: 3. These insurers generally do not participate in insurance guaranty funds created by state law. These guaranty funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised. 4. Some states maintain lists of approved or eligible surplus lines insurers and surplus lines producers may use only insurers on the lists. Some states issue orders that particular surplus lines insurers cannot be used. 5. For additional information about the above matters and about the insurer, you should ask questions of your insurance producer or surplus lines producer. You may also contact your insurance department consumer help line.

DECE&O03/06

**NOTICE**
The coverage afforded by this policy is RESTRICTED Please read your policy carefully.

NO FLAT CANCELLATIONS

THIS POLICY IS ISSUED PURSUANT TO THE NORTH DAKOTA SURPLUS LINES INSURANCE STATUTE UNDER THE SURPLUS LINES PRODUCER LICENSE OF GREGORY J PRICE. THE INSURER IS A QUALIFIED SURPLUS LINES INSURER, BUT IS NOT OTHERWISE LICENSED BY THE STATE OF NORTH DAKOTA AND DOES NOT PARTICIPATE IN THE NORTH DAKOTA INSURANCE GUARANTY ASSOCIATION.


HISCOX

# Professional Liability Errors and Omissions Insurance
Policy Form

**About this Policy**

This is a Claims made and Reported Policy in which Claim Expenses are included within the Limit of Liability unless otherwise noted. Please read the entire policy carefully and consult with your Insurance broker or advisor. Those words (other than the words in the captions) which are printed in Boldface are defined in the Policy.

In consideration for the payment of premium and in reliance on the statements made and information provided to Underwriters, including but not limited to the statements made and information provided in and with the **Application** which is made a part of this Policy, as well as subject to the Limits of Liability, the Deductible and all of the terms, conditions, limitations and exclusions of this Policy, Underwriters and the **Insured** agree as follows:

**I. Insuring Agreement**

Underwriters will pay on behalf of the **Insured** all **Damages** and **Claim Expenses** in excess of the Deductible and subject to the applicable Limit of Liability that the **Insured** becomes legally obligated to pay as a result of any covered **Claim** that is first made against the **Insured** and reported in writing to Underwriters during the **Policy Period** or during any properly exercised and applicable **Extended Reporting Period**, for any **Wrongful Act** by the **Insured** or by anyone for whom the **Insured** is legally responsible, provided, however, that such **Wrongful Act** was committed or allegedly committed on or after the **Retroactive Date** set forth in Item 8. of the Declarations and further provided that the **Insured** had no knowledge of the actual or alleged **Wrongful Act** prior to the inception date of this Policy.

**II. Defense and Settlement**

A.  Underwriters shall have the right and the duty to defend any covered **Claim**, including but not limited to the appointment of legal counsel, subject to the Limits of Liability, the Deductible and all applicable terms and conditions of this Policy, even if such **Claim** is groundless, false, or fraudulent.

B.  Not withstanding Section II.A. above, the **Insured** may request in writing the right to appoint defense counsel to defend any covered **Claim**, but only with the prior written consent of Underwriters, who shall have the sole discretion to consent to such an appointment. The appointment by the **Insured** of defense counsel pursuant to this provision shall not waive or alter the rights of Underwriters with respect to review and determination as to the reasonableness of any **Claim Expenses** presented for payment.

C.  Underwriters shall have the right to investigate and to solicit settlement demands or proposals as to any covered **Claim** as Underwriters deem reasonable and the **Insured** shall, as a condition to any coverage under this Policy, have the duty to cooperate with Underwriters in such investigation and in the solicitation of settlement demands or proposals including, but not limited to:

1.  upon request, submit to examination and interrogation under oath by Underwriters' representative;

2.  attend hearings, depositions and trials as requested by Underwriters;

3.  assist in securing and giving evidence and obtaining the attendance of witnesses;

4.  provide written statements to Underwriters' representative and meet with such representative for the purpose of investigation and/or defense, all without charge to Underwriters.

D.  Underwriters shall not settle any **Claim** without the consent of the **Insured**, which consent the **Insured** will not unreasonably withhold.

E.  If the **Insured** shall refuse to consent to any settlement recommended by Underwriters and shall elect to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then Underwriters' liability for the **Claim** shall not exceed the amount for which the



**HISCOX**

## Professional Liability Errors and Omissions Insurance
Policy Form

**Claim** could have been so settled plus **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the Limits of Liability set forth in Sections VI.A. and B. of this Policy and Item 4. of the Declarations.

F.   Underwriters shall not be obligated to settle any **Claim**, pay any **Damages** or **Claim Expenses**, or continue to defend any **Claim** after the applicable Limit of Liability has been exhausted.

**III. Definitions**

A.   **Application** means the signed application for the Policy including any attachments and other materials submitted in conjunction with the signed **Application**. The **Application** shall be maintained by Underwriters and shall be deemed a part of this Policy as if physically attached. If this Policy is a renewal or replacement of a previous policy or policies issued by Underwriters, all signed applications and other materials that were attached to and became a part of these previous policies shall be considered as part of the **Application** for this Policy.

B.   **Affiliate** means any person or entity, which is related to any **Insured** through common ownership, control or management. **Affiliate** shall not include **Subsidiary.**

C.   **Bodily Injury** means physical injury to or sickness, disease or death of a person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by a person, as a result of **Bodily Injury.**

D.   **Claim** means any notice received by the **Insured** of a demand for **Damages** or for non-monetary relief based on any actual or alleged **Wrongful Act**, whether or not the nature or extent of the **Damages** or non-monetary relief is known or asserted at the time of receipt of any notice.

E.   **Claim Expenses** means:

1.   all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of Underwriters in the investigation, defense, appeal, and settlement of a **Claim**;

2.   all other reasonable and necessary fees, costs, and expenses incurred by the **Insured** with the written approval of Underwriters; and

3.   premiums on appeal bonds, attachment bonds or similar bonds; however, Underwriters shall have no obligation to apply for or furnish any such bonds.

F.   **Claim Expenses** shall not include and no coverage shall be afforded for:

1.   salaries, wages or expenses of **Individual Insureds,**; or

2.   the loss of earnings of the **Named Insured** or any **Individual Insured** except to the extent such constitutes Supplemental Payments pursuant to Section IV.C. of this Policy; or

3.   the defense of any criminal investigation, criminal grand jury proceeding, or criminal action.

G.   1.   **Damages** means a monetary judgment or award the **Insured** is legally obligated to pay for any covered **Claim** (including pre- or post-judgment interest) or a settlement negotiated by Underwriters with the consent of the **Insured.**

2.   **Damages** does not include any of the following:

a.   fines, penalties, taxes, sanctions, or that portion of any multiplied damages award which exceeds the damage award so multiplied;

b.   any punitive or exemplary damages provided, however, that, if such damages are otherwise insurable under applicable law and regulation,



## Professional Liability Errors and Omissions Insurance
Policy Form

Underwriters will pay an award of punitive or exemplary damages made against the **Insured** for or based upon a **Wrongful Act** in the performance of **Professional Services**, in excess of the Deductible and up to a maximum sum of $ 250,000. The enforceability of this section shall be governed by such applicable law that most favors coverage for punitive damages. This limit shall be a part of and not in addition to the Limits of Liability set forth in items 4.A. and B. of the Declarations.;

    c.  the return or restitution of fees, commissions, profits, or charges for goods provided or services rendered; or

    d.  any amounts deemed uninsurable by the law pursuant to which this Policy is construed.

H.   **Extended Reporting Period** means that period described in **Section VII.** of the Policy.

I.   **Individual Insured** means:

    1.  any past, present or future partner, director, officer, member, board member, or employee of the **Named Insured**, but only for acts within the scope of their duties for the **Named Insured**;

    2.  any independent contractor of the **Named Insured**, but only for **Professional Services** performed on behalf of and at the direction of the **Named Insured**.

J.   **Insured** means:

    1.  the **Individual Insureds**;

    2.  the **Named Insured**;

    3.  any **Subsidiary** of the **Named Insured**;

    4.  a **Joint Venture** in which the **Named Insured** participates as a joint venturer pursuant to a written joint venture agreement, but only with respect to the liability imposed on the **Named Insured** for its participation in such **Joint Venture** and only with respect to **Wrongful Acts** committed or allegedly committed by the **Named Insured**. This definition does not extend coverage and no coverage will be provided for **Damages** or **Claim Expenses** to the **Joint Venture** itself or any other entity or individual that is part of the **Joint Venture**.

K.   **Joint Venture** means a business endeavor, confirmed in a written agreement, between the **Named Insured** and one or more entities or individuals in which the **Named Insured's** participation is the performance of **Professional Services**.

L.   **Named Insured** means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. of the Declarations.

M.   **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

    1.  False arrest, detention or imprisonment;

    2.  Malicious prosecution;

    3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

    4.  Oral or written publication of material that slanders, libels, or defames a person or organization, or disparages the goods, products or services of a person or organization; or

    5.  Oral or written publication or material that violates a person's right of privacy.

N.   **Policy Period** means the period of time specified in Item 7. of the Declarations.



## Professional Liability Errors and Omissions Insurance
Policy Form

O.   **Pollutants** means any solid, liquid, gaseous, or thermal irritant, contaminant or toxin, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, radon, asbestos, electromagnetic radiation, or waste of any like substances. In addition to pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed.

P.   **Professional Services** means only those services specified in Item 3. of the Declarations, as performed by or on behalf of the **Named Insured** for others for a fee or other compensation.

Q.   **Property Damage** means physical loss of or physical damage to or destruction of any property including the loss of use thereof.

R.   **Subsidiary** means any entity identified in the **Application** of which the **Named Insured** owns on or before the **Policy Period** more than 50% of the issued and outstanding voting securities, either directly or indirectly through one or more of its **Subsidiaries.**

S.   **Retroactive Date** means the date specified in Item 8. of the Declarations.

T.   **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission, or **Personal Injury** committed solely in the performance of the **Professional Services** of the **Insured.**

**IV. Extensions of Coverage**   A.   **Estates, Heirs, and Legal Representatives**

In the event of the death or incapacity of an **Individual Insured,** or the bankruptcy of an **Insured,** any **Claim** made against any of the heirs, executors, administrator, trustees in bankruptcy, assignees, and legal representatives of any **Insured,** based upon actual or alleged **Wrongful Acts** of such **Insured,** shall be deemed to be a **Claim** against such **Insured** for the purposes of this Policy.

B.   **Spousal Liability**

If a **Claim** is asserted against the lawful spouse of any **Individual Insured** solely as a result of:

1.   the status of the spouse as spouse of any **Individual Insured;** or

2.   the ownership interest of the spouse in property which the claimant seeks as recovery for actual or alleged **Wrongful Acts** of any **Individual Insured;**

Then, such **Claim** shall be deemed a **Claim** against the **Individual Insured** for the purpose of this Policy; provided, however, that, subject to all of the terms, conditions, limitations, restrictions and exclusions of this Policy, coverage shall only apply to **Claims** for actual or alleged **Wrongful Acts** of the **Insured** and no coverage will be provided for any **Claim** for any actual or alleged **Wrongful Acts** of the spouse.

C.   **Supplemental Payments**

Underwriters will pay the reasonable expenses incurred by the **Insured,** including loss of wages, if the **Insured** is required by Underwriters to attend arbitration proceedings or trial in the defense of a covered **Claim.** Such payments made by Underwriters are subject to the following:

1.   The maximum reimbursement for such expenses shall not exceed $250 per day for each **Insured** who attends such proceedings at Underwriters' request.

2.   Underwriters' maximum total liability for such reimbursement shall not exceed $5,000 per **Claim** regardless of the number of **Insureds** who attend such proceedings at Underwriters' request.


HISCOX

## Professional Liability Errors and Omissions Insurance
Policy Form

3.  Such payments shall be part of and shall reduce the available Limit of Liability.

4.  The Deductible amount applicable to each **Claim** including **Claim Expenses** shall not apply to the payments made by Underwriters pursuant to this provision of this Policy.

**V. Exclusions**

This Policy does not apply to and Underwriters shall have no obligation to pay any **Damages, Claim Expenses,** or **Supplemental Payments** for any **Claim:**

A.  alleging fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or deliberate acts or omissions, provided, however, that Underwriters will pay **Claim Expenses** in the defense of **Claims,** alleging such conduct in relation to the performance by the **Insured** of **Professional Services** unless and until there is a final adjudication establishing that the **Insured** committed such conduct and further provided that:

   1.  notwithstanding the above, Underwriters shall have no obligation to provide a defense or pay **Claim Expenses** for or relating to any criminal investigation, grand jury proceeding, or criminal action; and

   2.  this exclusion shall not apply to any **Individual Insured** who did not commit or participate in such fraudulent, dishonest, criminal, or knowingly wrongful, malicious, or deliberate acts or omissions.

B.  based upon, arising out of or attributable to the gaining of any profit or advantage to which the **Insured** was not legally entitled;

C.  alleging discrimination of any type or nature, including, but not limited to any violations of federal, state, or local law or ordinance, as to any past, present, or future employee of the **Insured,** or any applicant for employment with or potential employee of the **Insured;**

D.  any **Claim** alleging a **Wrongful Act:**

   1.  committed or allegedly committed prior to the **Retroactive Date;** or

   2.  which has been the subject of any notice given under any other policy prior to the beginning of the **Policy Period** and of which this Policy is a renewal or replacement; or

   3.  as to which the **Insured** had knowledge prior to the **Policy Period** and the **Insured** had a reasonable basis to believe that such **Wrongful Act** could give rise to a **Claim;** provided, however, that, if this Policy is a renewal or replacement of a previous policy issued by Underwriters providing materially identical coverage, the **Policy Period** referred to in this Section V.D.3 will be deemed to refer to the inception date of the first such policy issued by Underwriters;

E.  brought by one **Insured** against another **Insured,** or brought by any **Affiliate** or by any **Joint Venture** in which the **Insured** participates, as against any **Insured;**

F.  for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or amendments thereto or similar provisions of any federal, state or local statutory law or common law;

G.  based upon or arising out of any violation of the Securities Act of 1933 as amended; the Securities Exchange Act of 1934 as amended; any state blue sky or securities laws or amendments thereto; any similar state or federal laws or amendments thereto; or any regulation issued pursuant to any of the foregoing statutes;

H.  based upon or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder;

I.  based upon or arising out of bodily injury, sickness, disease, or death of any employee of the **Insured** arising out of and in the course of employment by the **Insured;** or any obligation for



# Professional Liability Errors and Omissions Insurance
Policy Form

which the **Insured** or any insurer may be liable under any Workers' Compensation, Unemployment Compensation, Employers Liability, or Disability Benefit Law, or any similar law, regulation, or ordinance, or the failure of the **Insured** to comply with any such statutes or any obligations thereunder;

J.   based upon or arising out of the liability of others that is assumed by any **Insured** under any contract or agreement unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

K.   based upon, arising out of, or attributable to **Bodily Injury** or **Property Damage**;

L.   which would not have occurred in whole or in part but for the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time, including, but not limited to any loss, cost or expense arising out of any:

1.   Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the existence, non-existence or effects of **Pollutants**; or

2.   **Claim** by or on behalf of a governmental authority or others for **Damages** because of testing for, identifying, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, communicating information about, responding to, or assessing the existence, non-existence or effects of **Pollutants**; including the failure to perform any of these activities;

M.   based upon, arising out of or attributable to the actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan or patent;

N.   with respect to any **Subsidiary**, for, based upon, arising out of, or attributable to, either directly or indirectly:

1.   any **Wrongful Act** committed or allegedly committed before the date it became a **Subsidiary**;

2.   any **Wrongful Act** committed or allegedly committed after the date it ceased to be a **Subsidiary**;

O.   any **Claim** based upon or arising out of any breach of express warranties, guarantees, or contracts, including, but not limited to any agreements to refund, repurchase, or indemnify any person or entity;

P.   any actual or alleged violation of any federal, state, or local statutes, ordinances, or regulations regarding or relating to unsolicited telemarketing, solicitations, emails, faxes, or any other communications of any type or nature, including but not limited to any anti-spam and do-not-call statutes, ordinances, or regulations;

Q.   the failure to procure or maintain adequate insurance or bonds.

**VI. Limits of Liability and Deductible**

A.   The Limit of Liability shown in Item 4.A. of the Declarations as applicable to "**Each Claim**" is the maximum amount that Underwriters are or can be liable for **Damages, Claim Expenses** and Supplemental Payments for each covered **Claim** first made against the **Insured** and reported to Underwriters during the **Policy Period** or **Extended Reporting Period,** if applicable, regardless of when such payments are made.

B.   The amount shown in Item 4.B of the Declarations applicable to "**Aggregate for all Claims**" is subject to Section VI.A. above regarding "**Each Claim**", and is the maximum amount that Underwriters are or can be liable to pay for all **Damages, Claim Expenses** and Supplemental Payments for all **Claims** first made against the **Insureds** and reported to



# HISCOX

## Professional Liability Errors and Omissions Insurance
Policy Form

Underwriters during the **Policy Period** or **Extended Reporting Period,** if applicable, regardless of when such payments are made.

C.   All **Claims** based upon or arising out of any and all continuous, repeated or related **Wrongful Acts** committed or allegedly committed by one or more of the **Insureds** shall be considered a single **Claim** first made against the **Insured** on the date when the first of such **Claims** was first made against and received by the **Insured,** or when notice of such continuous, repeated or related **Wrongful Acts** was first reported to the applicable insurer. If the **Claims** are deemed to have been first made against the **Insured** during this Policy, such will be deemed to be a single **Claim** for all purposes, including but not limited to, the applicability of one Deductible and the Limit of Liability per **Claim** as set forth in Section VI.A. above and in Item 4.A. of the Declarations.

**VII.  Extended Reporting Period**

A.   If Underwriters or the **Named Insured** cancels or nonrenews this Policy, then the **Named Insured** shall have the right, upon payment of the applicable additional premium based on the percentage of the expiring premium specified in Item 12.B. of the Declarations, to an extension of the coverage granted by this Policy during the period set forth in Item 12.A of the Declarations, which period shall be referred to as the **Extended Reporting Period.** This **Extended Reporting Period** will apply only to **Claims** first made against the **Insured** during the **Extended Reporting Period** for or based upon **Wrongful Acts** committed or allegedly committed prior to such effective date of cancellation or nonrenewal and otherwise covered by this Policy.  The right to purchase the **Extended Reporting Period** shall not apply if this Policy is canceled by Underwriters for nonpayment of premium.

B.   As a condition precedent to the right to purchase the **Extended Reporting Period** the total premium for this Policy must have been paid.  The right to purchase the **Extended Reporting Period** shall lapse unless a written notice of the election of the **Extended Reporting Period,** together with full payment of the additional premium for the **Extended Reporting Period,** is received by Underwriters within 30 days after the effective date of cancellation or the expiration date of this Policy.  In the event such written notice of election and the payment of the additional premium are not received by Underwriters within such 30-day period, there shall be no right to purchase the **Extended Reporting Period** at a later date.

C.   If the **Extended Reporting Period** is purchased, the entire premium shall be deemed earned at its commencement without any obligation by Underwriters to later return any portion thereof.

D.   The Limits of Liability available during the **Extended Reporting Period** shall be the remaining available Limits of Liability under this canceled or nonrenewed Policy.  There shall be no separate or additional Limit of Liability available for the **Extended Reporting Period** and the purchase of the **Extended Reporting Period** shall in no way increase the Limit of Liability set forth in Item 4. of the Declarations.

**VIII.  Conditions**

A.   **Reporting of Claims**

1.   In the event a **Claim** is first made against any **Insured,** the **Insured,** as a condition precedent to any right to coverage under this Policy, shall:

a.   give written notice to Underwriters of any such **Claim** as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or, if applicable during the **Extended Reporting Period;** or

b.   if the **Insured** receives any summons, arbitration demand, or notice of any legal, quasi-legal, or other adjudicatory or adversarial proceeding, provide immediate notice in writing to Underwriters of such receipt.



## Professional Liability Errors and Omissions Insurance
Policy Form

     c.  The written notice set forth in Sections VIII.A.1.a. and b. above shall include any and all documents, including every demand, notice, summons or other applicable information received by the **Insured** or by the **Insured's** representatives and should be sent to the representative of Underwriters set forth in Item 6. of the Declarations.

    2.  If the **Insured** has the right to either accept or reject the arbitration of any **Claim**, the **Insured** shall exercise such right only with the written consent of Underwriters.

**B.**   **Notice of potential Claims**

If, during the **Policy Period** an **Insured** first becomes aware of a **Wrongful Act** to which this Insurance applies and which might subsequently give rise to a **Claim**, the **Insured** may give written notice to Underwriters of a potential **Claim** during the **Policy Period**. Such notice must include:

1. the identity of the potential claimant;

2. the identity of the person(s) who allegedly committed the **Wrongful Act**;

3. the date of the alleged **Wrongful Act**;

4. specific details of the alleged **Wrongful Act**; and

5. any written notice from the potential claimant describing the **Wrongful Act**.

If this notice is submitted to Underwriters during the **Policy Period**, then any **Claim** that is subsequently made against the **Insured** arising from the **Wrongful Act** about which notice was given to Underwriters shall be deemed for the purpose of this Policy to have been first made during the **Policy Period**. This provision shall not apply to, nor shall the reporting of potential **Claims** be permitted during the **Extended Reporting Period**.

**C.**   The **Insured** shall not, except at its own cost, make any payment, incur any expense, admit any liability, settle any **Claim**, or assume any obligation without the prior written consent of Underwriters.

**D.**   **Acquisition or Creation of Another Entity**

This Policy is issued and the premium computed on the basis of the information submitted to Underwriters as part of the **Application**. If, after the beginning of the Policy Period, the **Named Insured**:

1. acquires substantially all of the assets of another entity;

2. acquires voting securities in another entity or creates another entity, which as a result of such acquisition or creation become a **Subsidiary**; or

3. acquires another entity by merger such that the **Named Insured** is the surviving entity,

Then the coverage provided under this Policy shall apply to such new creation or acquisition; but only with respect to **Wrongful Acts** occurring or allegedly occurring after the acquisition, merger or creation. As a condition for any coverage under this Section VIII.D., if the revenues of the newly created or acquired entity exceed 10% of the current annual revenues of the **Named Insured** as reflected in Question number 6 of **Application**, then coverage for such newly created or acquired entity or asset acquisition will cease ninety (90) days after the effective date of such creation or acquisition unless, within such ninety (90) day period:

a. the **Named Insured** provides Underwriters with written notice of such creation or acquisition;

b. the **Named Insured** provides Underwriters with such information in connection therewith as Underwriters may deem necessary;

c. the **Named Insured** accepts any special terms, conditions, exclusions, or additional premium charge as may be required by the Insurer; and



## Professional Liability Errors and Omissions Insurance
Policy Form

    d.   Underwriters, at their sole discretion, agree by written endorsement to provide such coverage.

Nothing contained in Section VIII. D. shall provide coverage for the newly created or acquired entity for **Wrongful Acts** occurring or allegedly occurring prior to the effective date of such creation or acquisition.

**E.**    **Action against Underwriters**

No action shall be taken against Underwriters unless, as a condition precedent thereto, there shall have been full compliance by the **Insured** with all the terms and conditions of this Policy; nor shall any such action be taken against Underwriters until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and Underwriters. No person or organization shall have any right under this Policy to join Underwriters as a party to any **Claim** against the **Insured** nor shall Underwriters be impleaded by the **Insured** or their legal representatives in any such **Claim.**

**F.**    **Trade Sanctions**

This Policy does not apply to the extent any trade or economic sanctions, or other laws or regulations prohibit the Underwriters from providing insurance, including, but not limited to, the payment of any claims.

**G.**    **Other Insurance**

This Policy shall be excess insurance over any other valid and collectable insurance available to the **Insured**, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this Policy.

**H.**    **Subrogation**

In the event of any payment under this Policy, Underwriters shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery thereof, and the **Insured** shall execute all papers required and do everything that may be necessary to secure and preserve such rights, including but not limited to the execution of such documents necessary to enable the Insurer to effectively bring suit in Underwriters' name. The **Insured** shall do nothing to prejudice such rights without first obtaining the written consent of Underwriters. Any recovery shall first be paid to Underwriters to the extent of any **Damages** or **Claim Expenses** paid by Underwriters, with the balance paid to the **Insured**. However, no subrogation shall be had against any **Insured.**

**I.**    **Notice of cancellation**

This Policy may be canceled by the **Named Insured** by giving advance written notice to Underwriters stating when thereafter such cancellation shall be effective. This Policy may also be canceled by Underwriters by mailing to the **Named Insured** by registered, certified or other first class mail, at the **Named Insured's** address shown in Item 2 of the Declarations, written notice stating when not less than sixty (60) days thereafter [or ten (10) days thereafter when cancellation is due to nonpayment of premium], the cancellation shall be effective. The mailing of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice. If this Policy shall be canceled by the **Named Insured**, Underwriters shall retain the customary short rate proportion of the premium. Payment or tender of any unearned premium by Underwriters shall not be a condition precedent to the effectiveness of the cancellation, but such payment shall be made as soon as practicable.


**HISCOX**

## Professional Liability Errors and Omissions Insurance
Policy Form

**J.   Alteration and assignment**

No change in, modification of, or assignment of interest under this Policy shall be effective unless made by written endorsement to this Policy signed by an authorized representative of Underwriters. Notice to or knowledge received by any representative of Underwriters or by any other person regarding any such change, modification, or assignment shall not be effective to stop Underwriters from asserting any rights under this Policy, unless such is made by written endorsement signed by an authorized representative of Underwriters.

**K.   Warranties and covenants**

The **Insured** warrants, which warranties are a condition for any of Underwriters' obligations hereunder:

1.   that the statements made in the **Application** and in its attachments and any materials submitted therewith are true and are the basis of the Policy and are to be considered as incorporated into and constituting a part of this Policy; and

2.   that the statements made in the **Application** and in its attachments and any materials submitted therewith are their representations; that they shall be deemed material to the acceptance of the risk assumed by Underwriters under the Policy and that this Policy is issued in reliance upon the truth of such representations; and

3.   that in the event the **Application,** including its attachments and any materials submitted therewith, contains misrepresentations which materially affect either the acceptance of the risk assumed by Underwriters under this Policy, this Policy shall be void and of no effect whatsoever.

**L.   Bankruptcy or Insolvency**

The bankruptcy or insolvency of the **Insured** shall not relieve Underwriters of any of their obligations under this Policy.

**M.   Territory**

This Policy shall apply worldwide, provided that any action, arbitration, or other proceeding for, in relation to, or arising from the **Claim** is brought within the United States, its territories or possessions, or Canada.

**N.   False or fraudulent claims**

If any **Insured** shall commit fraud in proffering any claim as regards amount or otherwise, this insurance shall become void as to such **Insured** from the date such fraudulent claim is proffered.

**O.   Titles**

Titles of sections of this Policy are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.



**HISCOX**                 **ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE**

Hiscox is committed to complying with trade and economic sanctions. To that end:

I.   No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, Australia, United Kingdom or United States of America.

II.  The U.S. Department of Treasury Office of Foreign Assets Control
     (OFAC) administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site
     http://www.treas.gov/offices/enforcement/ofac/.

     Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

     A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

     A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

     In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

     (1)   Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

     (2)   Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

     (3)   Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

     (4)   Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

     (5)   Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

 **HISCOX**          **ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE**

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



**HISCOX**

**Policyholder Notice**
**Complaints or Comments**

Any complaints or comments may be sent:

o   By Mail to:

Legal Department
Hiscox USA
520 Madison Avenue, 32nd Floor
New York, NY 10022; or

o   By Email to:

us_helpdesk_rfl@hiscox.com



**CONFORMITY NOTICE**

(This does not amend, extend, or alter the coverages or any other provisions contained in your policy)

Whenever the symbol "$" is used in this policy, it shall mean United States Dollars (USD).



**Endorsement 1**

NAMED INSURED: Campbell Property Management, LLC

**E2.1 Professional Services Description**                                    Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that Item 3. of the Declarations shall read as follows:

Solely in the performance of services as a property manager, for a fee.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017          Certificate No.: MPL1092583.17
Endorsement No:        1                   Processed Date:02/13/2017
                    Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

## Endorsement 2

NAMED INSURED: Campbell Property Management, LLC

### E54.2 Additional Named Insured Coverage

Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that Item 1. of the Declarations, **Named Insured**, is amended to include the following:

Campbell Properties, LLC

It is hereby understood and agreed that the above captioned **Insured**(s) shall only be afforded coverage for Wrongful Acts committed solely in the performance of the Professional Services described in Endorsement E2.1.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017          Certificate No.: MPL1092583.17
Endorsement No:        2                    Processed Date:02/13/2017

Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

## Endorsement 3

NAMED INSURED: Campbell Property Management, LLC

### E65.1 Nuclear Incident Exclusion Clause-Liability-Direct (Broad)          Page 1 of 2

In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to and Underwriters shall have no obligation pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

1.   Under any Liability Coverage, to injury, sickness, disease, death or destruction

a)   with respect to which an **Insured** under the Policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such Policy but for its termination upon exhaustion of its limit of liability; or

b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or behalf of, any insured or (2) has been discharged or dispersed therefrom;

b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.



## Endorsement 3

NAMED INSURED: Campbell Property Management, LLC

**E65.1 Nuclear Incident Exclusion Clause-Liability-Direct (Broad)**                    Page 2 of 2

IV.  As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; **"nuclear facility"** means

(a)  any nuclear reactor;

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material, with respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Certificate of Insurance to which it is attached.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017           Certificate No.: MPL1092583.17
Endorsement No:        3                     Processed Date:02/13/2017
           Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

**Endorsement 4**

NAMED INSURED: Campbell Property Management, LLC

**E101.1 Excess Limits**                                                Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that Item 8. of the Declarations, is amended to show a **Retroactive Date** of 03/15/2010 in lieu of 03/15/2009, for limits provided in excess of the primary $250,000 Limit of Liability.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017              Certificate No.: MPL1092583.17
Endorsement No:          4                            Processed Date:02/13/2017

                    Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

### Endorsement 5

NAMED INSURED: Campbell Property Management, LLC

### E111.1 Property Managed

Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that with respect to **Claims** made against the **Insured** by the other owners of real estate properties in which said **Insured** holds an equity interest or by any third party, subject to all Policy terms and conditions, the amounts payable by the Company shall be a percentage of the total amount necessary to satisfy the **Claim** which is equal to the percentage of the subject property or properties owned by interests other than the **Insured**.

The coverage afforded by this endorsement shall terminate at such time as the sum of the percentages of the property owned by the **Insured** shall exceed 50.0% of the total ownership of the property.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017          Certificate No.: MPL1092583.17
Endorsement No:        5                        Processed Date:02/13/2017

Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**Endorsement 6**

NAMED INSURED: Campbell Property Management, LLC

**E240.12 Lloyd's Syndicate**                                    Page 1 of 1

Proportion Percent: 100%
Syndicate: 3624
Contract #: B1234HisInc2017
Registration Date: December 22, 2005

Endorsement effective: 03/15/2017        Certificate No.: MPL1092583.17
Endorsement No:        6                 Processed Date:02/13/2017

Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

**Endorsement 7**

NAMED INSURED: Campbell Property Management, LLC

**E451.2 Property Management Services Endorsement**                    Page 1 of 2

In consideration of the premium charged, it is understood and agreed that the Policy is amended as follows:

1. In Clause III. **DEFINITIONS**, paragraph P., "**Professional Services,**" is amended to read as follows:

   P. **Professional Services** means **Property Management Services** performed for others, for compensation.

2. In Clause III. **DEFINITIONS**, paragraph D., "**Claim,**" is amended to include the following at the end thereof:

   **Claim** shall also include **Property Management BIPD Claims**.

3. Clause III. **DEFINITIONS** is amended to include the following at the end thereof:

   PM-A. **Property Management BIPD Claim** means a written demand for **Damages** or for non-monetary relief alleging **Bodily Injury** or **Property Damage** arising from the **Insured's** performance of **Property Management Services** for properties not owned by the **Insured**.

   PM-B. **Property Management Services** means the following:

   1. development and implementation of management plans and budgets;
   2. oversight of physical maintenance of property;
   3. solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;
   4. development, implementation and management of loss control and risk management plans for real property;
   5. development, procurement, implementation and management of contracts and subcontracts necessary to the daily functioning of real property; or
   6. personnel administration and record keeping.

   **Property Management Services** shall not mean, and this Policy shall not cover the management or implementation of renovations, construction or reconstruction projects.

4. In Clause V. **EXCLUSIONS**, paragraph K. is deleted in its entirety and replaced with the following:

   K. based upon, arising out of, or attributable to **Bodily Injury** or **Property Damage**; provided, however, this exclusion shall not apply to **Bodily Injury** or **Property Damage** resulting from **Property Management BIPD Claims**.

5. Clause V. **EXCLUSIONS** is amended to include the following at the end thereof:

   This Policy does not apply to and Underwriters shall have no obligation to pay any **Damages**, **Claim Expenses**, or **Supplemental Payments** for any **Claim**:



**Endorsement 7**

NAMED INSURED: Campbell Property Management, LLC

**E451.2 Property Management Services Endorsement**                    Page 2 of 2

PM-A.   based upon or arising out of any actual or alleged performance of or failure to perform services as a real estate agent, real estate broker, escrow agent, title agent, title abstractor, property developer, real estate appraiser or investment advisor.

PM-B.   based upon or arising out of any actual or alleged performance of or failure to perform construction management services; provided, however, this exclusion will not apply to the hiring of a construction manager, general contractor or subcontractor as part of the **Insured's Professional Services**.

PM-C.   based upon or arising out of any actual or alleged credit check or background check of a person that has not consented to such credit check or background check.

PM-D.   based upon or arising out of any actual or alleged warranty or guarantee as to any future value of any property.

PM-E.   based upon or arising out of any actual or alleged formulation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein.

PM-F   based upon or arising out of any actual or alleged commingling of or inability or failure to safeguard funds.

PM-G.   based upon or arising out of any actual or alleged **Property Management Services** performed for any property in which the **Insured** maintains an ownership interest of 50% or more.

PM-H.   based upon or arising out of any actual or alleged formation, growth, presence, release, dispersal, containment, removal, testing for or detection or monitoring of any molds, fungi, spores or other similar growths or organic matter, including but not limited to aspergillus, penicillium or any train or type of Stachybotris, commonly and collectively referred to as the "Black Molds."

6.   Notwithstanding anything in the Policy to the contrary, all **Property Management BIPD Claims** shall be subject to a sublimit of liability of $50,000, which shall be part of, and not in addition to, the applicable Limit of Liability.

All other terms and conditions remain unchanged.



Endorsement effective: 03/15/2017          Certificate No.: MPL1092583.17
Endorsement No:          7                  Processed Date:02/13/2017

Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

**Endorsement 8**

NAMED INSURED: Campbell Property Management, LLC

**E9990.2 Service of Suit Endorsement**                           Page 1 of 1

SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be
due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the
jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause
constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an
action in any Court of competent jurisdiction in the United States, to remove an action to a United
States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the
United States or of any State in the United States.  It is further agreed that services of process in such
suit may be made upon

# Hiscox Inc.
# 520 Madison Ave. - 32nd Floor
# New York, NY 10022
# Attn: Head of Claims

and that in any suit instituted against one of them upon this contract, Underwriters will abide by the final
decision of such Court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of Underwriters
in any such suit and / or upon the request of the Insured (or reinsured) to give a written undertaking to
the Insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the
event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes
provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or
Director of Insurance or other officer specified for that purpose in the statute, or his successor or
successors in office, as their true and lawful attorney upon whom may be served any lawful process in
any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary
hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above
named as the person to whom the said officer is authorized to mail such process or a true copy
thereof.

N.M.A. 1998



Endorsement effective: 03/15/2017      Certificate No.: MPL1092583.17
Endorsement No:    8              Processed Date:02/13/2017

Hiscox Inc.

By : Carl Bach
(Authorized Representative)



**HISCOX**

### Endorsement 9

NAMED INSURED: Campbell Property Management, LLC

**E102.1 Additional Excess Limits**                              Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that Item 8. of the Declarations, is amended to show a **Retroactive Date** of 03/15/2016 in lieu of 03/15/2009, for limits provided in excess of the $500,000 limit layer.

All other terms and conditions remain unchanged.

Endorsement effective: 03/15/2017            Certificate No.: MPL1092583.17
Endorsement No:       9                     Processed Date:02/13/2017

      ·   Hiscox Inc.

By : Carl Bach
(Authorized Representative)



7015 1520 0000 6162 4198

UNITED STATES POSTAGE
02 1P            $ 008.88°
0000885051       OCT 26 2018
MAILED FROM ZIP CODE 58102

# First Class Mail

SERKLAND
**LAW FIRM**°
SINCE 1888
10 Roberts Street • P.O. Box 6017
Fargo, North Dakota 58108-6017

Corporation Service Company
Registered Agent for Hiscox, Inc.
1709 North 19th Street, Suite 3
Bismarck, ND 58501-2121