**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Campbell Property Management, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | |
| | ) | |
| Lloyd's Syndicate 3624, Lloyd's of | ) | Case No. 3:18-cv-00237 |
| London Underwriters, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant Lloyd's Syndicate 3624, Lloyd's of London Underwriters'

("Lloyd's") motion to dismiss filed on January 3, 2020.  Doc. No. 24.  On January 31, 2020,

Plaintiff Campbell Property Management, LLC ("CPM") responded in opposition to the motion.

Doc. No. 28.  Lloyd's replied on February 14, 2020.  Doc. No. 29.  CPM's amended complaint

asserts claims for breach of contract and insurance bad faith stemming from Lloyd's denial of

coverage under an insurance policy.  Relying on a policy exclusion, Lloyd's moves to dismiss the

amended complaint for failure to state a claim.  For the reasons below, the motion is granted.

## I.      BACKGROUND

At the motion to dismiss stage, the Court accepts the amended complaint's factual

allegations as true.  See Doc. No. 12.  CPM is a North Dakota limited liability company that

provides professional property management services to 54 business entities.  Id. ¶¶ 2, 6.  Lloyd's

is a New York insurance carrier authorized to conduct business in North Dakota.  Id. ¶ 3.  Lloyd's

issued a Professional Liability Errors and Omissions Policy ("Policy") to CPM effective from

March 15, 2017 to March 15, 2018.  Id. ¶ 9.

The Policy provides coverage for amounts CPM "becomes legally obligated to pay . . . for any Wrongful Act by the Insured or by anyone for whom the Insured is legally responsible." Doc. No. 1-1, p. 15. The term Wrongful Act is defined as "any actual or alleged breach of duty, negligent act, error, omission, or Personal Injury committed" in the performance of professional services as a property manager. Id. at 18. Endorsement 7 to the Policy excludes coverage for claims "based upon or arising out of any actual or alleged commingling of or inability or failure to safeguard funds" ("commingling exclusion"). Id. at 37. The Policy also bars coverage for claims "alleging fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or deliberate acts or omissions" ("deliberate acts exclusion"). Id. at 19. The deliberate acts exclusion affords an exception for "any Individual Insured who did not commit or participate in" otherwise excluded conduct ("innocent insured exception"). Id.

As a professional property management company, CPM assumed a fiduciary responsibility to oversee its client entities' operating accounts. Doc. No. 12, ¶ 7. To that end, CPM created separate client accounts, consisting of a checking account and a savings account, for each of the 54 business entities. Id. ¶ 11. The clients retained ownership of the accounts, which CPM accessed to manage their income, expenses, and rental security deposits. Id. Choice Financial, a Fargo, North Dakota, bank, handled a majority of the client accounts. Id. ¶ 12.

On January 12, 2018, Choice Financial informed CPM that Mickey Haarstad—the company's controller—had initiated 155 electronic transfers from the client accounts to her personal account. Id. ¶¶ 13-15. The transfers occurred from September 29, 2014 to January 9, 2018 and totaled $1,294,967.58. Id. ¶¶ 15-16. CPM locked down its accounting software and removed Haarstad's access to the company's bank accounts the same day Choice Financial

revealed the improper transfers.  Id. ¶ 17.  Prior to that day, no owner, member, director, officer, or manager at CPM knew about Haarstad's transfers.  Id. ¶ 18.

Each of the 54 client entities then made claims against CPM for their losses.  Id. ¶¶ 25-26. CPM recovered $1,025,000 through a separate commercial lines insurance policy regarding employee theft.  Id. ¶ 35.  The claim under the Lloyd's Policy is for the remaining $269,967.58 in losses.  Id. ¶ 36.  CPM tendered timely notice of the underlying claims on May 11, 2018.  Id. ¶ 39. Lloyd's denied coverage.  Id. ¶ 41.

This action ensued, with CPM initially filing suit in North Dakota state court on October 26, 2018.  See Doc. No. 1.  The case was properly removed to federal court on November 19, 2018.  See id.  In accord with the Court's October 1, 2019 order (Doc. No. 10), CPM filed an amended complaint adding Lloyd's as a Defendant on October 17, 2019.  Doc. No. 12.  Lloyd's responded with the pending motion to dismiss.  Doc. No. 24.

## II.     LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal if a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully.  Wilson v. Ark. Dep't

of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678). While courts must accept a complaint's factual allegations as true, they are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Iqbal, 556 U.S. at 678). In addition, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citing Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010)). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." In re SuperValu, Inc., 925 F.3d 955, 962 (8th Cir. 2019) (citations omitted).

In this diversity action, the parties agree North Dakota law controls. Accordingly, the Court will apply North Dakota Supreme Court precedent and attempt to predict how that court would decide any state-law questions it has yet to resolve. See Stuart C. Irby Co., Inc. v. Tipton, 796 F.3d 918, 922 (8th Cir. 2015). To establish a breach of contract claim, a plaintiff must demonstrate "(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, ¶ 13, 730 N.W.2d 841 (citations omitted). More specific to insurance contracts, "[a]n insurer has a duty to act fairly and in good faith in its contractual relationship with its policyholders." Fetch v. Quam, 2001 ND 48, ¶ 12, 623 N.W.2d 357 (citation omitted). A claim for insurance bad faith arises where "the insurer acts unreasonably in handling an insured's claim." Id. (citation omitted).

4

"Insurance policy interpretation is a question of law." Forsman v. Blues, Brews & Bar-B-Ques, Inc., 2017 ND 266, ¶ 10, 903 N.W.2d 524 (citing K & L Homes, Inc. v. Am. Family Mut. Ins. Co., 2013 ND 57, ¶ 8, 829 N.W.2d 724).  The North Dakota Supreme Court has consistently explained its approach to interpreting insurance policies this way:

> We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction.  If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract.  While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage.  We will not strain the definition of an undefined term to provide coverage for the insured.  We construe insurance contracts as a whole to give meaning and effect to each clause, if possible.  The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.  Exclusions from coverage . . . must be clear and explicit and are strictly construed against the insurer.  While exclusionary clauses are strictly construed, a contract will not be rewritten to impose liability when the policy unambiguously precludes coverage.

Borsheim Builders Supply, Inc. v. Manger Ins., Inc., 2018 ND 218, ¶ 8, 917 N.W.2d 504 (ellipses in original) (citations and internal quotation marks omitted).

## III.  DISCUSSION

In seeking dismissal of the complaint, Lloyd's relies solely on the commingling exclusion. That exclusion consists of two prongs.  The first precludes coverage for claims "based upon or arising out of any actual or alleged commingling of . . . funds."  Doc. No. 1-1, p. 37.  The second has the same effect for claims "based upon or arising out of any actual or alleged . . . inability or failure to safeguard funds."  Id.  Lloyd's contends both prongs apply because (1) Haarstad

commingled funds from the client accounts with her personal account, and (2) CPM failed to safeguard the client accounts from Haarstad's theft.[1]  The Court agrees.

## A.    Commingling

At the outset, the Policy does not define "commingling."  Where a term in an insurance policy is undefined, the North Dakota Supreme Court routinely turns to dictionaries to ascertain the term's plain, ordinary meaning.  Ctr. Mut. Ins. Co. v. Thompson, 2000 ND 192, ¶ 15, 618 N.W.2d 505.  Doing so here yields a definition for "commingle" as "to combine (funds or properties) into a common fund or stock."  Commingle, Merriam-Webster, https://www.merriam-webster.com/dictionary/commingle (last visited Apr. 10, 2020).  Beyond question, Haarstad combined funds in the client accounts with her personal account, thereby creating a common fund. CPM nonetheless resists dismissal on this ground by arguing that the exclusion applies only to commingling of client funds with CPM's own funds.  But the Policy's plain language belies this contention, and the weight of authority rejects such an interpretation.

Examining the Policy itself, there is no language that limits the exclusion to commingling with CPM's funds alone.  In North Dakota, "arising out of" is broadly construed to mean "causally connected with, not 'proximately caused by.'"  Norgaard v. Nodak Mut. Ins. Co., 201 N.W.2d 871, 875 (N.D. 1972).  That means the exclusion bars coverage for claims causally connected with any commingling—full stop.  The Policy's plain language therefore expresses that the commingling exclusion turns not on who caused the loss, but rather what conduct triggered the claims.  See Bethel v. Darwin Select Ins. Co., 735 F.3d 1035, 1042 (8th Cir. 2013).  So long as CPM became

---

[1] The Court need not accept as true CPM's allegations that it "acted reasonably to safeguard" the client accounts and that "[t]here was no commingling of Client funds."  Doc. No. 12, ¶ 19.  These are legal conclusions, not factual assertions.  See Iqbal, 556 U.S. at 678.

legally obligated to pay the claims, the identity of the actor that commingled the funds is irrelevant. See id. (explaining that analogous "arising out of any" language "applies to *any* claim that arises out of *any* loss or improper use of client funds caused by *anyone*, be they a 'guilty' insured, an 'innocent' insured, or even a non-insured"); see also Fidelity Nat'l Title Ins. Co. v. Maxum Indem. Co., CIVIL ACTION No. 16-1360, 2017 WL 4048162, at *7 (E.D. Pa. Sept. 12, 2017) (finding similar policy exclusion precluded coverage for employer where employee combined funds in fiduciary accounts with personal funds); PNA, L.L.C. v. Interstate Ins. Grp., No. Civ.A. 02-1130, 2003 WL 21488120, at *4 (E.D. La. June 2, 2003) (same); Bankers Multiple Line Ins. Co., Inc. v. Pierce, 20 F. Supp. 2d 1004, 1006-07 (S.D. Miss. 1998) (same).

Construing the Policy as a whole fortifies this conclusion. See Borsheim Builders, 2018 ND 218, ¶ 8, 917 N.W.2d 504. Extending CPM's proposed interpretation to its logical end renders the commingling exclusion meaningless. The Policy's deliberate acts exclusion already bars coverage for fraudulent, dishonest, or knowingly wrongful conduct. That exclusion would plainly apply if CPM were to deliberately combine client funds with its own, obviating the need for a specific commingling exclusion. Perhaps more importantly, the deliberate acts exclusion allows for an innocent insured exception. But there is no such exception to the commingling exclusion. Instead, it applies to "any actual or alleged commingling" without qualification, evincing an intent to preclude claims predicated on commingling even where the insured is a nonparticipant. See PNA, L.L.C., 2003 WL 21488120, at *4; Pierce, 20 F. Supp. 2d at 1007. Giving meaning and effect to each clause of the Policy compels a determination that the commingling exclusion's first prong applies here.

Inserting CPM's desired limiting language would contravene the clear directive that courts may not rewrite insurance policies to create coverage where none exists. See Borsheim Builders, 2018 ND 218, ¶ 8, 917 N.W.2d 504. But for Haarstad commingling the funds in the client accounts with her personal account, the claims against CPM would not have arisen. See Murray v. Greenwich Ins. Co., 533 F.3d 644, 650 (8th Cir. 2008). The Policy therefore unambiguously precludes coverage. CPM's breach of contract claim necessarily fails as a result.

## B.    Inability or Failure to Safeguard

The commingling exclusion's second prong likewise bars coverage independently. Again turning to the dictionary, when used as a verb, "safeguard" is defined as "to make safe: protect." Safeguard, Merriam-Webster, https://www.merriam-webster.com/dictionary/safeguard (last visited Apr. 10, 2020). CPM contends that dismissal is inappropriate under the second prong because the reasonableness of the actions taken to safeguard the funds is a contested fact question. Any attempt to inject reasonableness into the analysis, however, lacks support.

Simply put, a failure to maintain fiduciary accounts equates to a failure to safeguard funds. Phila. Indem. Ins. Co. v. Stazac Mgmt., Inc., Case No. 3:16-cv-369-J-34MCR, 2018 WL 2445816, at *14 (M.D. Fla. May 31, 2018); see also Bethel, 735 F.3d at 1042; Maxum Indem. Co., 2017 WL 4048162, at *7. The allegations in the amended complaint illustrate that CPM owed a fiduciary duty to maintain the client accounts and that Haarstad stole just shy of $1.3 million from those accounts over more than three years. Regardless of precautionary measures, CPM actually failed to protect the client accounts from theft, resulting in claims against CPM for the attendant losses. That is enough to defeat coverage under the commingling exclusion's second prong.

### C. Insurance Bad Faith

A claim for insurance bad faith is available where "[a]n insurer acts unreasonably by failing to compensate an insured for a loss covered by a policy, unless the insurer has a proper cause for refusing payment." Hartman v. Estate of Miller, 2003 ND 24, ¶ 12, 656 N.W.2d 676 (citation omitted). "It is axiomatic there is no breach of the duty of good faith and fair dealing when there is no potential for coverage." Mau v. Twin City Fire Ins. Co., 1:16-cv-325, 2017 WL 4479731, at *7 (D.N.D. Oct. 3, 2017), aff'd 910 F.3d 388 (8th Cir. 2018). Because there is no coverage here, the insurance bad faith claim warrants dismissal.

## IV. CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant legal authority. For the reasons above, Lloyd's motion to dismiss (Doc. No. 24) is **GRANTED**. The amended complaint is **DISMISSED WITH PREJUDICE**. Considering the comprehensive briefing submitted, Lloyd's motion for hearing (Doc. No. 30) is **DENIED**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 10th day of April, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court